[No. B019539. Second Dist, Div. Seven. Dec. 16, 1987.]

JOHN GRINDLE, Plaintiff and Appellant, v.
WILBUR LORBEER et al., Defendants and Respondents.

COUNSEL

Mohi & Glasman and Gary Mohi for Plaintiff and Appellant.

Rigg & Dean, William L. Haluck, Marcia A. Primac, Bottum, Rady & Feliton and Steve Johnson for Defendants and Respondents.

---

**OPINION**

**JOHNSON, J.**—John Grindle appeals from a summary judgment in favor of defendants Wilbur Lorbeer, Fireman's Fund Insurance Company and the law firm of Beam, DiCaro, D'Anthony and Stafford (Beam law firm). Grindle sustained injuries while golfing at the El Dorado Country Club. Defendant Wilbur Lorbeer owns the pro golf shop at El Dorado and represents El Dorado in this action. Fireman's Fund provided El Dorado's public liability insurance and retained defendant Beam law firm to defend its insured. El Dorado's action for equitable indemnity against Grindle led to the malicious prosecution action below.

The sole issue presented on appeal is whether careless prefiling research constitutes sufficiently unreasonable conduct to permit an inference of actual malice. Under the facts of this case, we conclude it does not. Consequently, we affirm the summary judgment for defendants.

### FACTS AND PROCEEDINGS BELOW

On May 26, 1980, while golfing at El Dorado, John Grindle was hit from behind by an electric golf cart driven by John Lee, sustaining a fractured leg and other injuries. Grindle sued Lee for his injuries. Lee brought a separate action for indemnification from El Dorado on May 20, 1982, after his motion to cross-complain was denied. Grindle v. Lee eventually settled.

Lorbeer's attorney, associate John West of Beam law firm answered Lee's complaint for indemnification and cross-complained for equitable indemnity against Grindle on June 30, 1982. Lorbeer and Fireman's Fund knew nothing of this cross-complaint.

Grindle's attorney, Gary Mohi, requested immediate dismissal of the cross-complaint, believing the allegations of negligence against his client to be without merit. He reminded West of Grindle's failing health as well. West refused to dismiss, but offered Grindle an open extension to answer subject to 20 days' notice. Grindle was very upset by this additional litigation, so Mohi answered immediately to avoid having it "hanging over his [Grindle's] head."

West voluntarily dismissed the indemnity action with prejudice on October 27, 1982. He informed Mohi of his intention to do so in a letter, stating he reached this decision after reviewing the depositions of Grindle, Lee, and Dr. Bateman in the Grindle v. Lee action. He apologized for any inconvenience to Grindle and explained, "I am now of the opinion that our Cross-Complaint for Indemnity has no merit . . . ."

On January 25, 1983, Grindle initiated proceedings against Lorbeer, Fireman's Fund, and the Beam law firm for malicious prosecution and negligence. On behalf of Grindle, Mohi alleged all defendants acted without probable cause and with malice in bringing the equitable indemnity action against his client because they did not honestly and reasonably believe a tort victim could be responsible for his own injuries.

In response, West denied any malicious feelings toward Grindle and stated he reached an honest belief in the viability of an indemnity claim against the injured party after careful research of the facts and law. His research of the facts included review of a memo summarizing the facts and proceedings of the Grindle v. Lee action prepared by his law clerk, Mr. Kutyla, review of Fireman's Fund's investigative file, and his own knowledge of the properties of electric golf carts. West's legal research covered California case law and statutes and the ALR digest. He concluded California law did not preclude such an action, while the New York case of *Yarish* v. *Dowling* (1972) 70 Misc.2d 467 [333 N.Y.S.2d 508, 510] recognized the right of a defendant to bring a counterclaim against a plaintiff for indemnity. West contended he filed the cross-complaint to allow a determination of the comparative fault of all parties.

After filing, West asked Lee's attorney, Scott Diamond, for copies of the depositions taken in the Grindle v. Lee action. West waited over two months before making a second request to see them. Upon reading the depositions West notified Mohi of his decision to dismiss, admitting his indemnity claim against Grindle lacked merit.

Lorbeer and Fireman's Fund jointly responded with an advice of counsel defense, denying any vicarious liability for independent counsel's tortious conduct.

The trial court granted summary judgment in favor of the Beam law firm on January 13, 1986, and in favor of Lorbeer/Fireman's Fund on January 21, 1986.

## DISCUSSION

A trial court must grant a motion for summary judgment when the papers present no triable issue of material fact and the movant is entitled to

judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)[1] **(1)** The burden of establishing the absence of any triable issue is on the moving party. (*Lucchesi* v. *Giannini & Uniack* (1984) 158 Cal.App.3d 777, 782 [205 Cal.Rptr. 62].)

■ A malicious prosecution claimant must plead and prove three things about the wrongful lawsuit brought against him: (1) termination in his (defendant's) favor, (2) lack of probable cause to bring the action and (3) a malicious motive behind its initiation. (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]; *Tool Research & Engineering Corp.* v. *Henigson* (1975) 46 Cal.App.3d 675, 682 [120 Cal.Rptr. 291]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 255, p. 2532.) To obtain summary judgment, a defendant must convince the court at least one of these elements is missing and there is no triable issue of material fact on that question.

Favorable termination for Grindle is not in dispute. The parties' disagreement centers on the existence of probable cause and malice. Grindle's trial attorney relied on West's dismissal of the lawsuit immediately upon reading the depositions to prove both lack of probable cause and malice, citing *Weaver* v. *Superior Court* (1979) 95 Cal.App.3d 166 [156 Cal.Rptr. 745]. Grindle also alleged on appeal that respondent lacked probable cause "and therefore was guilty of malice." *Weaver* stands for the proposition that malice may be inferred from lack of probable cause. (*Weaver, supra,* at p. 193.) It does not, however, equate the two. With this consideration in mind, we now determine whether the trial court correctly applied the law in reaching its decision.

■ Malice means actual ill will or some improper purpose, whether express or implied. (4 Witkin, *supra,* at pp. 2535, 2536; *Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 383 [295 P.2d 405].) It may range anywhere from open hostility to indifference. (See, e.g., *Bertero* v. *National General Corp., supra,* 13 Cal.3d 43, 54 [attorney admitted filing suit because he "wanted to show the Appellate Court what a bastard Bertero was"]; *Hudson* v. *Zumwalt* (1944) 64 Cal.App.2d 866, 873 [149 P.2d 457] [". . . I will throw you in court and hold you there until you will be glad to sell."]; *Baker* v.

---

[1] Code Civil Procedure section 437c subdivision (c) states: "(c) The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.

*Gawthorne* (1947) 82 Cal App.2d 496, 500-501 [186 P.2d 981] [plaintiff made no attempt whatsoever to investigate the facts before filing suit].) Malice may also be inferred from the facts establishing lack of probable cause. (*Singleton* v. *Singleton* (1945) 68 Cal.App.2d 681, 696 [157 P.2d 886].)

To infer malice from the evidence supporting lack of probable cause, the parties' prefiling behavior must have been clearly unreasonable. The *degree* of unreasonable behavior necessary to support an inference of malice often creates confusion and unnecessary litigation. The *Weaver* court attempted to remedy this state of confusion with an explanation worth repeating: "However, this result [inference of malice] is *not* automatic. To complete proof of malicious prosecution, the presence of malice must be found as a matter of fact. As a consequence, it always remains a *possibility* that unreasonable behavior in terms of the nature of the prefiling behavior of the attorney, even though it would support a conclusion that there was no probable cause to file, would nevertheless *not* support an inference of malice. [ ] Thus, in a given case, unreasonable behavior which could lead to a determination that there was a lack of probable cause to file, might not provide a sufficient basis to infer malice, and without malice no case of malicious prosecution can be proved." (*Weaver* v. *Superior Court, supra,* 95 Cal.App.3d 166, 193, italics in original.)

Most importantly, the court held, ". . . the quantum of culpable conduct which must be proved to prevail as a plaintiff in a malicious prosecution case is *significantly greater* than that required to prevail in a case alleging only negligence." (*Weaver, supra,* at p. 193, italics in original.)

 We cannot conclude even construing the evidence most favorably to appellant that West's "culpable" conduct was sufficient to warrant an inference of malice. West's prefiling research of California law was adequate. As of 1982 when the Beam law firm filed against Grindle, California law did not expressly preclude a defendant from bringing a cross-complaint for equitable indemnity against an injured plaintiff.[2] True, a few months later we held "there can be no indemnity without liability," in *Munoz* v. *Davis* (1983) 141 Cal.App.3d 420, 425 [190 Cal.Rptr. 400]. This cast considerable doubt on the viability of respondent's theory. And on April 29, 1987,

---

[2] In *American Motorcycle Association* v. *Superior Court* (1978) 20 Cal.3d 578, 606 [146 Cal.Rptr. 182, 578 P.2d 899], the California Supreme Court stated "when the plaintiff is alleged to have been partially at fault for the injury, each of the third party defendants will have the right to litigate the question of the plaintiff's proportionate fault for the accident. . . ." The rule here is *not* that defendants may sue injured plaintiffs for indemnity; rather, it is that concurrent tortfeasors may obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis. (*Id.,* at p. 598.)

we turned considerable doubt into absolute certainty in *Seamen's Bank* v. *Superior Court* (1987) 190 Cal.App.3d 1485, 1491 [236 Cal.Rptr. 31]. There we held "a defendant has no cause of action for equitable indemnity against the victim of his own tort" because there is no equitable basis for shifting liability in such a situation. Nonetheless, as of 1982 the principles of comparative negligence still left some room to argue the propriety of bringing such an action.

Nor was West's factual research so deficient as to raise an inference of malice as a matter of fact. He reviewed Fireman's Fund's investigative file, a memo prepared by a law clerk of his firm summarizing the facts and proceedings of the case below, and relied partially on his own knowledge of the probable behavior of golf carts. This far surpasses the efforts found so minimal the court could infer malice in *Baker* v. *Gawthorne, supra,* 82 Cal.App.2d 496, where plaintiff's counsel conducted no prefiling factual research whatsoever. The availability of the Grindle v. Lee depositions and the length of time Attorney West waited to acquire them may have indicated carelessness, but not indifference or malice.

We are reluctant to infer malice solely from West's less than thorough factual research. Here there is no evidence West exhibited any overt malice toward Grindle or had some malicious purpose in filing the indemnity claim against Grindle. His dismissal of the indemnity action almost immediately after reading the depositions indeed seems to refute the existence of an ulterior motive. Rather it is consistent with a finding that West had filed the lawsuit in a good faith belief it had merit and discontinued the lawsuit upon realizing it was without merit.

■ The malicious prosecution action provides redress for those who suffer undue harassment through the legal process. The maliciously motivated lawsuit can subject the defendant to deep emotional distress and loss of reputation; it also clutters already crowded court dockets. (*Bertero* v. *National General Corp., supra,* 13 Cal.3d 43, 51.) Such abuse of the judicial process harms the individual defendant as well as the effective administration of justice. (*Id.,* at p. 50.)

At the same time, however, public policy also favors the principles of zealous representation and freedom of access to the courts. (*Williams* v. *Coombs* (1986) 179 Cal.App.3d 626, 639 [224 Cal.Rptr. 865].) Zealous representation sometimes requires an attorney to go out on a limb, to be innovative and creative in fashioning theories of liability or defense. Accordingly, an attorney needs only a reasonable and honest belief in the viability of each theory and the evidence supporting that theory, not a

conviction his client will prevail, to justify filing a claim or defense. (*Tool Research & Engineering Corp.* v. *Henigson, supra,* 46 Cal.App.3d 675, 683.)

We accommodate these competing values by requiring the plaintiff in a malicious prosecution action to bear the heavy burden of proving malice in fact. (*Weaver* v. *Superior Court, supra,* 95 Cal.App.3d 166, 193.) Any lesser standard would discourage attorneys from using their best efforts and, more dangerously, discourage individuals from availing themselves of the courts.

 Without actual malice, there can be no action for malicious prosecution. Negligence does not equate with malice. Nor does the negligent filing of a case necessarily constitute the malicious prosecution of that case. Here at worst the evidence only showed some negligence in Attorney West's factual research which led him to file a lawsuit against appellant Grindle he otherwise probably would not have filed. Accordingly, the trial court properly granted summary judgment for respondents.

DISPOSITION

Judgment affirmed.

Lillie, P. J., and Roberson, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.