Filed 10/30/20  Chavez v. Dhaliwal CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARCO CHAVEZ et al.,<br><br>   Plaintiffs and Appellants,<br><br>v.<br><br>RATTAN DEV. S. DHALIWAL et al.,<br><br>   Defendants and Respondents. | A157516<br><br><br>(Alameda County<br> Super. Ct. No. HG18921459) |

   This appeal concerns a SLAPPback action under Code of Civil Procedure section 425.18,[1] that is, a malicious prosecution action arising from the filing of a prior lawsuit that was dismissed pursuant to a special motion to strike under section 425.16.  The tortuous path of this case has its origins in a landlord/tenant dispute over a lease of space in a commercial building in Santa Clara County.  There are multiple parties who have nuanced relationships on each side, but we will introduce the litigation history by describing the sides simply as landlord and tenant.

   In that simplified framework, landlord filed and dismissed without prejudice two unlawful detainer actions against tenant in Santa Clara

_____

   [1] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

1

County Superior Court. A few months later, landlord filed a third unlawful detainer action. The day before landlord's summary judgment motion was set for hearing, tenant filed a complaint against landlord for malicious prosecution and seven other causes of action. The trial court granted summary judgment to landlord in the unlawful detainer action. The litigation on the malicious prosecution complaint then proceeded; eventually, after two anti-SLAPP rulings in favor of landlord, tenant's malicious prosecution complaint was dismissed in its entirety.

The saga continued in Alameda County Superior Court when landlord then filed its *own* malicious prosecution complaint against tenant, as well as the law firm (and two attorneys from that firm) who had represented tenant in the first malicious prosecution case—a classic SLAPPback action. One of the named defendant attorneys (Aliah A. Abdo) responded by filing her own special motion to strike. The trial court granted Abdo's motion on the ground that, as to her, landlord had not met its burden of showing the underlying lawsuit was initiated with malice. The trial court entered a judgment of dismissal in favor of Abdo, and this appeal followed. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

From 2002 to 2017, Friendly Wholesalers of California, Inc. (Friendly) leased space in a commercial building in San Jose, California (property). In about 2007, a limited liability company known as 2205-2213 Ringwood LLC (Ringwood) purchased the property and was assigned the lease. Ringwood hired Chavez Management Group, Inc. (CMG) to manage the property. Subsequent written amendments and addenda to the lease were entered into between Ringwood and Friendly, with Marco Chavez signing as manager for Ringwood and Jalal Shreim signing as owner of Friendly.

### A. Unlawful Detainer Actions

In April 2017, CMG filed an unlawful detainer action, naming Friendly and two other entities as defendants. The complaint alleged that Friendly and the other entities continued in possession of the property without permission. It alleged that there was a "written assignment" from Ringwood for CMG "to sue and take the property back in its own name." According to CMG, the unlawful detainer action was prompted by Friendly's illegal sublease of the premises to those entities. According to Friendly, the sublease had been approved by CMG. The action was voluntarily dismissed by CMG two months later.

In June 2017, CMG filed a second unlawful detainer action against Friendly, this time adding a third entity but making the same allegation that Friendly and the other entities continued in possession of the property without permission and that CMG was entitled to recover the property. This action was also voluntarily dismissed by CMG three months later. According to CMG's attorney, it was dismissed because Friendly filed a petition for bankruptcy.

In October 2017, CMG filed a third unlawful detainer action against Friendly. CMG moved for summary judgment, arguing that Friendly owed $39,498.72 in rent and had failed to tender the rent pursuant to a three-day notice to pay rent or quit. The motion was granted after hearing, and judgment was entered against Friendly.

### B. The Underlying Complaint for Malicious Prosecution in Santa Clara County

On November 16, 2017, the day before the summary judgment hearing in the third unlawful detainer action, Friendly and Shreim filed a complaint in Santa Clara County (Santa Clara complaint) against Marco Chavez,

George Chavez,[2] CMG and Ringwood.  The complaint asserted eight causes of action: (1) malicious prosecution; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) intentional interference with contractual relations; (5) negligent interference with contractual relations; (6) intentional interference with prospective economic advantage; (7) negligent interference with prospective economic advantage; and (8) violation of California's Unfair Competition Law.  (Bus. & Prof. Code, § 17200.)  The complaint alleged that the first two unlawful detainers actions were "frivolous" and "malicious" because Friendly's sublease was authorized, and Friendly's attempts to pay rent had been rejected.  It alleged that Marco and George Chavez, CMG and Ringwood had breached "various contracts" with Friendly and Shreim, and had interfered with the business relationship that Friendly and Shreim had with their subtenant, as well as a business relationship that Friendly and Shreim had with third party Everest California (Everest).  The caption page of the Santa Clara complaint identifies Rattan Dev S. Dhaliwal and Aliah A. Abdo of the Dhaliwal Law Group, Inc. (DLG) as attorneys for Friendly and Shreim.  The typed signature line at the end of the complaint identifies Dhaliwal as the attorney for Friendly and Shreim.  But it appears that Abdo provided the handwritten signature above that signature line, signing "for" Dhaliwal.

On December 21, 2017 and January 5, 2018, respectively, Marco and George Chavez, CMG and Ringwood filed two special motions to strike the Santa Clara complaint under the anti-SLAPP statute:  one to dismiss the claims brought by Shreim, and the other to dismiss the claims brought by Friendly.  The trial court granted the motions on March 19, 2018 and June

_____

[2] George Chavez and Marco Chavez were each alleged to own and control CMG and Ringwood.

4

13, 2018, respectively, concluding that Friendly and Shreim had not established a probability of prevailing on the merits of their claims. On the malicious prosecution claim, the trial court found that Shreim did not have standing because he was not a party in the unlawful detainer actions, and Friendly had not shown the actions were initiated without probable cause or with malice. On the contractual claims, the trial court found that Shreim and Friendly had not shown they were parties to any contracts with Marco and George Chavez, and CMG. On the interference claims, the trial court found Shreim did not show he had a relationship with any third parties, and neither Shreim nor Friendly presented evidence of any interference with those relationships. DLG did not contest the tentative rulings and did not make an appearance at either hearing.[3]

## C. Plaintiffs File Their Own Complaint for Malicious Prosecution in Alameda County

In September 2018, Marco Chavez, George Chavez, CMG and Ringwood (plaintiffs) filed their own complaint for malicious prosecution in Alameda County Superior Court (Alameda complaint), naming Friendly, Shreim, the DLG law firm, and attorneys Dhaliwal and Abdo as defendants.[4] The complaint alleged that the defendants participated in a "wrongful and malicious scheme" to use the Santa Clara complaint as a "bargaining chip" to settle the third unlawful detainer action. Plaintiffs alleged that, having filed the Santa Clara complaint, attorney Dhaliwal appeared at the summary judgment hearing, discussed plaintiffs' exposure on the Santa Clara

---

[3] As we will discuss, Abdo declares that she resigned from DLG in February 2018—after the special motions to strike were filed, but before the rulings on the motions.

[4] Defendants Friendly, Shreim, DLG, and Dhaliwal are not parties to this appeal.

5

complaint, and made multiple proposals to plaintiffs' counsel regarding a "global settlement" of both cases.

Abdo filed a special motion to strike the Alameda complaint under the anti-SLAPP statute. Abdo argued that the plaintiffs could not demonstrate a probability of prevailing on their malicious prosecution claim as to her.

After extensive briefing and argument, the trial court granted Abdo's special motion to strike in a lengthy written decision. First, the trial court explained in detail why it was "not clear that Plaintiffs have met their burden of showing a probability of prevailing on the element that the underlying lawsuit 'was litigated without probable cause.'" But regardless of their showing on probable cause, the trial court determined that "Plaintiffs have not met their burden of introducing evidence supporting the element that the underlying lawsuit 'was initiated with malice' as it pertains to Ms. Abdo." It found that "Plaintiffs introduced no evidence as to Ms. Abdo's subjective intent in connection with the underlying action, or even evidence as to her actual participation in drafting or filing the complaint in the underlying action. Instead, the only evidence as to her role is that her name appears as the second name in the caption of the pleading, below the name of Mr. Dhaliwal."

On May 30, 2019, the trial court entered judgment dismissing the Alameda complaint against Abdo.

## DISCUSSION

## I. ARGUMENTS ON JURISDICTION

Before we turn to the merits of the appeal, we address Abdo's arguments that we lack jurisdiction to decide it.

The Alameda complaint is a "SLAPPback" action, defined in the statute as "any cause of action for malicious prosecution or abuse of process arising

6

from the filing or maintenance of a prior cause of action that has been dismissed pursuant to a special motion to strike under Section 425.16." (§ 425.18, subd. (b)(1).)  The complaint is a SLAPPback because it asserts a cause of action for malicious prosecution based on the filing of the Santa Clara complaint, and the Santa Clara complaint was subsequently dismissed pursuant to plaintiffs' special motions to strike under the anti-SLAPP statute.

A motion to strike a SLAPPback action is subject to special rules for appellate review that differ from the rules applicable to anti-SLAPP motions generally.  Under section 425.18, subdivision (c), an *order* granting or denying a special motion to strike a SLAPPback is not directly appealable.  If a trial court denies the special motion to strike a SLAPPback or grants the motion "as to some but less than all causes of action alleged in a complaint," section 425.18, subdivision (g) provides that the aggrieved party may petition for a peremptory writ.  Where a trial court grants a special motion to strike a SLAPPback that disposes of all causes of action, the aggrieved party may seek a judgment of dismissal and then appeal from that judgment.  (§ 904.1, subd. (a)(1).)  Here, the trial court granted Abdo's motion to strike as to the only cause of action alleged against her in the Alameda complaint.  Plaintiffs followed the correct procedure by obtaining a judgment of dismissal and filing a timely notice of appeal from that judgment.

Abdo makes three arguments to the contrary, none of which are persuasive.  First, Abdo argues that plaintiffs' appeal should be dismissed because it is untimely.  California Rules of Court, rule 8.104(a)(1)(A) provides that a notice of appeal must be filed within 60 days after the clerk serves a filed-endorsed copy of the judgment.  Here, the clerk served a filed-endorsed copy of the judgment dismissing plaintiffs' action against Abdo on May 30,

7

2019.  Plaintiffs filed their notice of appeal on June 14, 2019.  Plaintiffs filed a timely notice of appeal.

Second, Abdo argues that plaintiffs' notice of appeal is "facially defective" because it only identifies the May 30, 2019 judgment and not the May 8, 2019 order granting her special motion to strike.  As described above, plaintiffs' notice of appeal correctly identifies the judgment of dismissal as the appealable judgment because, under section 425.18, subdivision (c), plaintiffs cannot directly appeal the motion to strike order.

Third, Abdo argues that plaintiffs' appeal is procedurally improper because they failed to file a peremptory writ pursuant to section 425.18, subdivision (g).  As we have described above, this provision is inapplicable because the trial court's order on Abdo's motion to strike disposed of the only cause of action alleged against her in the SLAPPback action.

Having rejected Abdo's three arguments regarding jurisdiction, we now turn to the merits of plaintiffs' appeal.

## II.    ARGUMENTS ON ANTI-SLAPP MOTION
### A. Standard of Review

The anti-SLAPP statute is "designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern."  (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884.)  Under the anti-SLAPP statute, a defendant may file a special motion to strike claims "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  (§ 425.16, subd. (b)(1).)

Resolution of a special motion to strike requires the court to engage in the now familiar two-step process.  "First, the court decides whether the

8

defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) If the court finds a showing has been made under the first step, "it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Ibid*.) We review a trial court's order granting an anti-SLAPP motion de novo.[5] (*Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 573.)

## B. First Step: Protected Activity

The first step of the anti-SLAPP analysis requires us to decide whether plaintiffs' malicious prosecution claim arises from protected activity. Here, there is no dispute that Abdo's initiation of the Santa Clara complaint is protected activity. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735.)

## C. Second Step: Probability of Prevailing

The second step of the anti-SLAPP analysis requires us to decide whether plaintiffs have demonstrated a probability of prevailing on their malicious prosecution claim. This determination follows a "summary-judgment-like procedure." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.) We "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) Looking at those affidavits, "[w]e do not weigh

---

[5] A SLAPPback claim can trigger particular additional requirements for filing a special motion to strike. (§ 425.18, subds. (c)–(i).) For example, a special motion to strike "may not be filed against a SLAPPback by a party whose filing or maintenance of the prior cause of action from which the SLAPPback arises was illegal as a matter of law." (§ 425.18, subd. (h).) But we need not address this requirement because plaintiffs concede that the filing and maintenance of the Santa Clara County Complaint "cannot be characterized as 'illegal as a matter of law'[.]"

credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699–700.) That is the framework in which we determine whether plaintiffs have met their required showing, a showing that is "not high." (*Id.* at p. 699.)

The sole cause of action in plaintiffs' Alameda complaint is for malicious prosecution. To establish their claim, plaintiffs must plead and prove that the Santa Clara complaint was (1) commenced by or at the direction of Abdo and pursued to a legal termination in plaintiffs' favor; (2) brought without probable cause; and (3) initiated with malice. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50 (*Bertero*).)

While their burden may not be "high," plaintiffs must demonstrate that their malicious prosecution claim is legally sufficient and supported by a sufficient prima facie showing. (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 469.)

Abdo does not seriously dispute the legal sufficiency of plaintiffs' malicious prosecution claim, although she emphasizes that pleadings are not proof, chastises plaintiffs for attempting to rely on allegations and group pleading as a substitute for admissible evidence, and argues that plaintiffs' complaint contains "conspiracy allegations" that are "inconsistent" with Civil Code section 1714.10's requirement to obtain pre-filing judicial approval to assert such allegations. These arguments are unpersuasive. (See *Olivares v. Pineda* (2019) 40 Cal.App.5th 343, 353, fn. 6 [explaining that the legal sufficiency threshold is about the adequacy of the allegations supporting the challenged causes of action]; *Alden v. Hindin* (2003) 110 Cal.App.4th 1502,

10

1506 [determining that the malicious prosecution cause of action was not subject to the prefiling approval requisites of section 1714.10].) We agree with the trial court that the Alameda complaint sufficiently alleges the three required elements of a malicious prosecution claim.

Instead, this appeal focuses on whether plaintiffs met their burden to demonstrate a probability that they will prevail on those three elements, supported by a sufficient prima facie showing made with "competent and admissible evidence."[6] (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1236.) We address each element in turn.

### 1. *Favorable Termination*

To determine whether a party has received a favorable termination in the prior action, we consider the judgment as a whole. (*Siebel v. Mittlesteadt* (2007) 41 Cal.4th 735, 741.) "Victory following a trial on the merits is not required." (*Ibid.*) Instead, a favorable termination " ' "must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit." ' " (*Ibid.*, quoting *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 342.) For example, a termination is considered favorable where the court grants summary judgment based on insufficient evidence to establish a triable issue of fact. (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1149–1150.)

---

[6] Abdo argues that plaintiffs' opening brief on appeal improperly references evidence that the trial court excluded as inadmissible, and that plaintiffs have waived any challenge to the trial court's evidentiary rulings. We need not address these arguments because plaintiffs do not challenge the evidentiary rulings and our analysis does not rely on any evidence excluded by the trial court.

It is unclear whether Abdo disputes plaintiffs' showing on this element. On the one hand, Abdo explains that plaintiffs achieved a "Clear Win" by prevailing on their anti-SLAPP motions. On the other hand, she states in a footnote that: "One could even argue that there was no decision on the merits . . . because the prior that [sic] anti-SLAPP motions filed were granted for procedural defects and other reasons apart from the merits." An aside in a footnote, without any authority, is not sufficient to raise an argument on appeal. (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947; Cal. Rules of Court, rule 8.204(a)(1)(B).)

To the extent Abdo actually makes such an argument, we do not find it persuasive. The Santa Clara complaint identifies Abdo as an attorney in the caption and appears to be signed by her "for" Dhaliwal. The trial court was clear that it granted plaintiffs' anti-SLAPP motions to strike the Santa Clara complaint because Shreim and Friendly had not shown a probability of prevailing on the merits of their claims. We readily conclude that plaintiffs met their burden on favorable termination.

## 2. *Lack of Probable Cause*

Plaintiffs argue next that they have met their burden to demonstrate a likelihood of prevailing on the lack of probable cause element because each of the causes of action in the Santa Clara complaint was legally untenable, at least as to some of the parties.

"Where there is no dispute as to the facts upon which an attorney acted in filing the prior action, the question of whether there was probable cause to institute that action is purely legal." (*Ross v. Kish* (2006) 145 Cal.App.4th 188, 202.). "The resolution of that question of law calls for the application of an *objective* standard to the facts on which the defendant acted." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878 (*Sheldon Appel*).) "An

action is deemed to have been pursued without probable cause if it was not legally tenable when viewed in an objective manner as of the time the action was initiated or while it was being prosecuted." (*Sycamore Ridge Apartments, LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1402 (*Sycamore Ridge*).) "Only those actions that ' "any reasonable attorney would agree [are] totally and completely without merit" ' may form the basis for a malicious prosecution suit." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817 (*Wilson*), quoting *Sheldon Appel*, *supra*, 47 Cal.3d at p. 885.)

"On the other hand, when there is a dispute as to the state of the defendant's knowledge and the existence of probable cause turns on resolution of that dispute, there becomes a fact question that must be resolved before the court can determine the legal question of probable cause." (*Medley Capital Corp. v. Security National Guaranty, Inc.* (2017) 17 Cal.App.5th 33, 48 (*Medley Capital*).) In such circumstances, and where plaintiffs have made a sufficient prima facie showing, their burden to demonstrate a probability of prevailing on the merits is satisfied. (*Id.* at pp. 45, 48.)

Probable cause "must exist for every cause of action advanced in the underlying action. '[A]n action for malicious prosecution lies when but one of [the] alternate theories of recovery is maliciously asserted . . . .' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292 (*Soukup*), quoting *Bertero*, *supra*, 13 Cal.3d at p. 57, fn. 5.) Plaintiffs argue that Abdo lacked probable cause on each of the eight causes of action alleged in the Santa Clara complaint. We need not address this argument because, even assuming plaintiffs met their burden on lack of probable cause, plaintiffs have failed to meet their burden on the element of malice, to which we now turn.

### 3. *Malice*

The element of malice goes to a defendant's *subjective intent* in initiating or continuing the prior action. (*Medley Capital*, *supra*, 17 Cal.App.5th at p. 48.) "The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose." (*Soukup*, *supra*, 39 Cal.4th at p. 292.) However, malice is not limited to actual hostility or ill will. (*Ibid*.) It may also be present when proceedings are instituted or maintained primarily for an improper purpose. (*Ibid*.) Accordingly, we must determine whether plaintiffs have met their burden to show that Abdo's subjective intent in initiating the Santa Clara complaint was malicious.

Plaintiffs' primary argument on the malice element is that their showing on Abdo's lack of probable cause essentially compels the inference that Abdo acted with malice. California courts have repeatedly rejected this argument. "Malice cannot be established simply by a showing of the absence of probable cause, although the fact that the prior suit was objectively untenable is a *factor* that may be considered on the issue of malice." (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 675.) To establish malice, a lack of probable cause must be "supplemented with proof that the prior case was instituted largely for an improper purpose." (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1114.) In other words, a plaintiff cannot "equate" malice with lack of probable cause. (*Grindle v. Lorbeer* (1987) 196 Cal.App.3d 1461, 1465.) This makes sense, since to hold otherwise would render two separate elements of a malicious prosecution claim—lack of probable cause and malice—superfluous.

14

Our decision in *Lanz* provides an example of the supplemental proof required to show that an attorney acted with malicious intent.  In that case, attorney Lanz filed a complaint against his former client regarding a fee dispute.  (*Lanz*, *supra*, 243 Cal.App.4th at p. 449.)  The client, who brought in a new attorney to represent her (Goldstone), filed a cross-complaint against Lanz alleging breach of fiduciary duty, declaratory relief, and professional negligence.  (*Id.* at p. 450.)  After Lanz defeated the cross-complaint in its entirety, Lanz filed a malicious prosecution complaint against Goldstone.  (*Id.* at p. 456.)  Goldstone filed an anti-SLAPP motion to strike the malicious prosecution complaint.  (*Ibid.*)  We concluded that Lanz had met his burden to show a probability of prevailing on his malicious prosecution claim, including on the element of malice.  (*Id.* at p. 459.)  That was because Lanz came forward with evidence to show Goldstone's malicious intent, including that Goldstone personally delivered the unfiled cross-complaint to Lanz's office and threatened to file it unless Lanz dismissed his underlying complaint in the fee dispute, stating that the cross-complaint would be so expensive and protracted to litigate that the costs would exceed any amounts owed to Lanz in the fee dispute.  (*Id.* at p. 449.)  At his deposition, Goldstone admitted that he " 'may have said that to [Lanz].' "  (*Id.* at p. 467.)

Similarly, in *Sycamore Ridge*, a landlord brought a malicious prosecution action against a former tenant, the tenant's attorneys who filed the underlying action on its behalf, and the attorneys who entered the underlying action as associated counsel.  (*Sycamore Ridge*, *supra*, 157 Cal.App.4th at p. 1390–1391.)  The attorney defendants filed anti-SLAPP motions to strike.  (*Id.* at p. 1395.)  The appellate court determined that the landlord had established a prima facie showing that the attorneys lacked probable cause to support at least some of the 18 causes of action alleged on

their client's behalf. (*Id.* at p. 1403.) On the element of malice, the landlord presented evidence that the attorney defendants had provided interrogatory responses in which their client stated she had suffered no compensable personal injuries and no property loss. (*Id.* at p. 1408.) Nevertheless, the attorneys subsequently provided a statement of damages asserting that their client had suffered more than $22,000 in compensatory damages and an additional $50,000 in punitive damages. (*Ibid.*) The attorneys then continued with the litigation despite their knowledge that the tenant's claims had no basis in fact. (*Ibid.*) The appellate court determined that the landlord had presented evidence demonstrating a probability of prevailing on the element of malice sufficient to defeat the special motion to strike. (*Id.* at p. 1409.)

Unlike *Lanz* and *Sycamore Ridge*, plaintiffs here have not met their burden of coming forward with evidence to show that Abdo's subjective intent in initiating the Santa Clara complaint was malicious.

The linchpin of plaintiffs' argument is that Abdo filed the complaint to "coerce" the settlement of the third unlawful detainer action, and that this conclusion is "inescapable" and "may be inferred" from the testimony of attorney Mercedes Gavin. We disagree. Gavin represented CMG in the three unlawful detainer actions. Her declaration in opposition to Abdo's special motion to strike describes how attorney defendant Dhaliwal appeared at the summary judgment hearing on the third unlawful detainer action and served her with a copy of the Santa Clara complaint. Gavin's declaration states that when she asked Dhaliwal " 'what [the complaint] was about' " he said that he " 'did not know all the details of the suit because another attorney in his office specializing in civil litigation had prepared the complaint[.]' " Gavin's declaration continues, "However, he was quick to point out to me that my

16

clients listed on the caption had great exposure." Gavin states that she was "a little perplexed" by that statement at the time, because she only represented CMG. Gavin goes on to describe Dhaliwal's repeated reference to the Santa Clara complaint throughout the day of the summary judgment hearing. Although the summary judgment motion was set to be heard at 9:00 a.m., the court did not decide the motion until "late afternoon." As Gavin describes in her declaration: "Throughout the day, during recess, Defendant Dhaliwal approached me several times to talk to me about the parties entering into a 'global settlement' of both cases with a waiver of the back rent owed by Friendly and granting it a new lease. At the time, Friendly owed more than $40,000 in unpaid rent to the landlord. When I told Mr. Dhaliwal that it was unlikely that my client would accept his proposal, he said that his clients had 'deep pockets' and were willing to heavily litigate the underlying case [Santa Clara complaint] unless the parties reached a quick settlement of both cases. [CMG] rejected Defendants' proposal."

It is undisputed that Abdo was not present for these conversations, let alone at court that day, and plaintiffs have presented no evidence that she shared the same motivation, or even had knowledge of the conversations between Gavin and Dhaliwal.[7] In her declaration in support of the motion to strike, Abdo states that she was unaware of any such conversations.

Plaintiffs raise questions regarding why Abdo failed to declare whether or not she drafted the Santa Clara complaint, why Abdo did not press the action between the time it was filed on November 16, 2017 and her departure from DLG in February 2018, and why she did not prepare Friendly and

---

[7] Gavin mentions that another "junior associate," who she identifies by name, appeared in court with Dhaliwal for the summary judgment hearing. That attorney is not named as a defendant.

17

Schreim's oppositions to plaintiffs' anti-SLAPP motions in that lawsuit before she left DLG.[8]  (Abdo's declaration states that she left employment at DLG prior to the litigation of the anti-SLAPP motions or court orders in the Santa Clara complaint, and that she "did not even read Plaintiffs' anti-SLAPP motions or respond to them, the related court orders, or have any idea what was occurring" until she was served with the Alameda complaint.)  Plaintiffs argue that these questions suggest Abdo knew the underlying lawsuit was meritless.  But plaintiffs' burden is satisfied by presenting evidence regarding Abdo's subjective intent, not posing questions that amount only to speculation.  The record does not show any attempt by plaintiffs to get the answers to these questions, or request a continuance to obtain necessary discovery to oppose the special motion to strike, as is permitted under section 425.18, subdivision (e).

Here, the only evidence regarding Abdo's participation in the Santa Clara complaint is her name listed under attorney Dhaliwal on the caption page, and her signature "for" attorney Dhaliwal.  The evidence shows that, whatever her participation, Abdo acted on behalf of, if not at the direction of, attorney Dhaliwal.  It does not show her subjective intent in initiating or continuing the Santa Clara complaint with malice.

In sum, we conclude that plaintiffs did not meet their burden on the element of malice as to Abdo.

## DISPOSITION

The judgment is affirmed.  Defendant Abdo is entitled to her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

---

[8] Recall that the anti-SLAPP motions to the Alameda complaint were filed on December 21, 2017 and January 5, 2018.

18

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Stewart, J.


A157516, *Chavez et al. v. Dhaliwal, et al.*

19